IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARRY STEWART | : | CIVIL ACTION |
| | : | |
| v. | : | No. 12-5190 |
| | : | |
| C.O. STACEY RYBAK, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                                            **November 6, 2014**

      Plaintiff Barry Stewart, a prisoner formerly housed at the Philadelphia Detention Center (PDC), brings claims pursuant to 42 U.S.C. § 1983 against PDC Correctional Officers (COs) Stacey Rybak and Towanda Lewis and an unknown number of other John or Jane Doe COs, arising out of a September 10, 2011, incident in which he was assaulted at the PDC. COs Rybak and Lewis have filed a motion for summary judgment as to all claims against them, and Stewart concedes the facts developed in discovery do not support his claims against these two Defendants. Stewart opposes summary judgment on his claim against the still-unidentified John or Jane Doe COs and seeks leave to amend his Amended Complaint to include a failure-to-protect claim against the City of Philadelphia based on the City's staffing policies at the PDC. For the reasons stated below, Defendants' summary judgment motion will be granted, the claim against the John and Jane Doe COs will be dismissed, and Stewart's motion for leave to amend will be granted.

**BACKGROUND**[1]

On September 10, 2011, Stewart was housed in E Dorm at the PDC. E Dorm is a square dormitory with eight sections, each holding between twenty-four and thirty-two inmates.[2] The Dorm has two levels, with some sections on the upper level and some on the lower level. The CO Booth for the Dorm is in the middle, with steps going up and down to the various housing sections. Stewart's bunk was located on the lower level of E Dorm. By Stewart's account, E Dorm was predominantly run by men of the Muslim faith, and every section captain in the Dorm was Muslim.

According to CO Lewis, the PDC "goes down for count" at 6:00 p.m. Lewis Dep. 6. During the count, the inmates are locked in their sections. Once the count is completed, the COs go on a meal break.[3] On September 10, 2011, COs Lewis and Rybak were working the 3:00 p.m. to 11:00 p.m. shift on E Dorm. CO Rybak went on break first, then CO Lewis took her break. According to CO Rybak, when a CO is working alone, she is not allowed to leave the CO Booth.

At approximately 7:15 p.m., while CO Lewis was on break and CO Rybak was alone in the CO Booth, a group of inmates in Stewart's section gathered together and attacked him. The

---

[1] "On a motion for summary judgment, a district court must view the facts in the light most favorable to the non-moving party and must make all reasonable inferences in that party's favor." *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). The facts regarding the incident in which Stewart was assaulted are drawn from the record materials submitted by the parties in their summary judgment briefing.

[2] Sergeant Barbara Eisler, the supervisor on duty on the evening of September 10, 2011, testified the maximum capacity for E Dorm is 232 inmates. Sergeant Eisler also stated when the Dorm is at maximum capacity, there should be three COs on duty, but she acknowledged this staffing requirement is not always met. *See* Eisler Dep. 11.

[3] CO Lewis referred to this break as a "lunch break," though the break typically occurs around 6:00 p.m. Lewis Dep. 6.

inmates pinned Stewart against a gate and proceeded to stab and kick him repeatedly. According to Stewart, more than ten inmates were involved in the attack, which went on for ten to fifteen minutes. During the attack, Stewart screamed for help, but no one came at first. Eventually, several guards responded to the incident, and Stewart recalls the attack ended when a male CO pulled him off the floor where he was lying in the fetal position.[4] Although Stewart did not see everyone who was involved in the attack, he believes a guard joined in the attack because he felt boots kicking him, and prisoners do not wear boots. Sergeant Eisler confirmed that guards wear boots, and inmates wear sneakers or "slippies," except for state inmates, who come with their own shoes.

Stewart testified that after the attack, the male correctional officer who pulled him off the floor took him to the hospital. His injuries included cuts, abrasions, stab wounds, and fractured ribs. Stewart was treated for some, but not all, of his injuries, and he has permanent scars on his face as a result of the attack.

In October 2012, Stewart filed a pro se Complaint against the "Warden/Superintendent and staff" of the PDC, alleging certain unknown correctional officers on duty on an unspecified day in September 2011 allowed multiple inmates into his unit "to cause imminent danger, serious physical injury, and assault [and] battery." Compl. 1, 3. By Order dated October 19, 2012, this Court dismissed Stewart's Complaint with leave to amend, instructing Stewart to identify the individuals referenced in the caption.

---

[4] Sergeant Eisler gave a different account, stating she was the first officer from outside of E Dorm to arrive following the altercation and when she arrived, Stewart was already standing with CO Rybak at the top of the steps. *See* Eisler Dep. 6-8. CO Rybak recalled seeing a fight going on and calling her supervisor, but did not recall how long it took for other COs to respond or how many COs responded. *See* Rybak Dep. 10-11.

On March 11, 2013, with the assistance of counsel,[5] Stewart filed an Amended Complaint against Philadelphia Commissioner of Prisons Louis Giorla, two "Jane Doe" COs who were on duty on Stewart's housing unit on the night of the assault, and an unknown number of other John or Jane Doe COs.  The Amended Complaint characterized the assault on Stewart as religiously motivated, alleging the inmates who participated in the attack were Muslim, while Stewart is Christian.  The Amended Complaint alleged the Warden and COs at the PDC knew it was dangerous to house a Christian inmate in a predominantly Muslim housing unit, accused the Jane Doe COs on duty during the attack of ignoring Stewart's calls for help for a substantial period of time, and accused the additional John and Jane Doe COs who were called in to stop the assault of joining in the attack by kicking Stewart while he was on the ground in a fetal position.  Stewart asserted the following claims:  (1) a failure-to-protect claim against all Defendants based on his placement in an open area with Muslims who were known to be dangerous and assaultive toward Christians (Count I); (2) a failure-to-protect claim against the two on-duty Jane Doe Defendants based on their "willful[] indifferen[ce]" to his pleas for help during the attack (Count II); (3) an assault claim against the unknown John and Jane Doe COs who responded to reports of the assault and then joined in kicking Stewart (Count III); and (4) a conspiracy claim against all Defendants for depriving him of his right to be safe while in custody by agreeing among themselves to place Stewart in an open area with Muslims who were known to be dangerous and assaultive toward Christians (Count IV).

---

[5] At this Court's request, Attorney Lawrence E. Wood generously agreed to represent Stewart pro bono in this case.

On April 8, 2013, Commissioner Giorla filed a motion to dismiss the Amended Complaint, which this Court granted as unopposed on August 9, 2013.[6] On January 13, 2014, Stewart filed a stipulation to amend the caption of the Amended Complaint, identifying COs Rybak and Lewis as the two Jane Doe Defendants who were on duty on the night of the assault. The stipulation did not identify any of the other John or Jane Doe Defendants.

On June 9, 2014, after the close of discovery, COs Rybak and Lewis filed a motion for summary judgment as to all claims. In his opposition to the motion, Stewart conceded the discovery process had yielded "scant if any evidence" to support his failure-to-protect claim predicated on Defendants' having placed him in an open area with Muslim inmates known to be dangerous and assaultive toward Christians, but argued the evidence supported a viable failure-to-protect claim on the alternative theory that the staffing policies at the PDC "almost guaranteed that the assault would occur and would carry on for some minutes before help could be obtained." *See* Pl.'s Opp'n to Defs.' Mot. for Summ. J. 3-4. Stewart also opposed the grant of summary judgment as to his assault claim against the still-unidentified John and Jane Doe COs, arguing his testimony that some of the participants in the assault wore boots was sufficient to permit a jury to conclude COs were among his assailants. Stewart did not mention either his failure-to-protect claim based on CO Rybak and CO Lewis's willful indifference to his pleas for help or his conspiracy claim, but instead limited his argument to his new failure-to-protect theory and his assault claim. *See id.* at 2 (asserting "the Prison, acting through its officers, fell short of its responsibility in two ways:  1.  It left one officer in charge of 230 inmates[,] [which] . . .

---

[6] So as to ensure the City Solicitor's Office would remain in the case while counsel were working to identify the various Jane and John Doe Defendants, the Court instructed that Giorla not be terminated as a party until those Defendants were identified.

amounts to deliberate neglect . . . . 2. Members of the responding crew unnecessarily and deliberately kicked Plaintiff while he was laying on the ground, trying to protect himself").

This Court heard oral argument on the motion for summary judgment at the final pretrial conference on July 10, 2014, and took the motion under advisement, continuing the July 14, 2014, trial pool date. During the argument, Stewart conceded summary judgment was appropriate as to Counts I and IV, but continued to oppose summary judgment on his assault claim against the John and Jane Doe COs (Count III). As to Count II, Stewart did not attempt to argue the merits of the claim as pleaded, but indicated he was pursuing the variation of the claim presented in his opposition brief—i.e., that the policy and practice of inadequately staffing E Dorm demonstrated prison officials knew of and disregarded an excessive risk to inmate health or safety. The Defendants objected that there was no basis to hold COs Rybak and Lewis liable under this alternative theory, arguing the City, not individual COs, would be the proper defendant in a claim challenging the staffing policies at the PDC. Stewart agreed the City was the proper Defendant for his revised failure-to-protect claim and indicated he would seek leave to amend his Amended Complaint. On July 26, 2014, Stewart filed a motion for leave to amend, which Defendants oppose.

**DISCUSSION**

**A.     Motion for Summary Judgment**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is

genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To defeat summary judgment, the nonmoving party may not rest on mere denials, but must "come forward with specific facts showing that there is a *genuine issue for trial*." *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

As set forth above, in his opposition brief and at the oral argument on Defendants' summary judgment motion, Stewart conceded the facts developed in discovery do not support the failure-to-protect claim alleged in Count I of the Amended Complaint or the conspiracy claim alleged in Count IV. Summary judgment is therefore appropriate as to these claims.

At oral argument, Stewart also conceded he was no longer pursuing the particular failure-to-protect claim alleged in Count II of the Amended Complaint,[7] but was instead pursuing a claim based on the staffing policies at the PDC. Because Stewart has produced no evidence suggesting COs Rybak and Lewis were involved in any way in establishing or maintaining any of the staffing policies he challenges, there is no basis to hold either Defendant liable under his new failure-to-protect theory. *Cf. A.M. v. Luzerne Cnty. Juvenile Detention Ctr.*, 372 F.3d 572,

---

[7] Stewart effectively abandoned this claim by failing to mention or present any argument in support of it in his opposition to Defendants' summary judgment motion. *See, e.g.*, *Overdorf v. Travelers Ins. Cos.*, 124 F. App'x 132, 133-34 (3d Cir. 2005) (holding the district court properly concluded plaintiff was no longer pursuing a breach of contract claim at the time summary judgment was entered where, inter alia, plaintiff failed to mention the claim in his summary judgment opposition); *Scott v. Sunoco Logistics Partners, LP*, 918 F. Supp. 2d 344, 347 n.2 (E.D. Pa. 2013) (holding a plaintiff abandoned claims she failed to address in her response to the defendant's motion for summary judgment).

585-86 (3d Cir. 2004) (holding individual defendants could be liable under § 1983 for developing inadequate policies and customs where "[e]vidence in the record show[ed] that [defendants] had responsibility for developing policies and procedures for the [juvenile detention facility at issue]").[8] Indeed, at oral argument, Stewart agreed the City is the appropriate Defendant as to his inadequate staffing claim. Because Stewart is no longer pursuing his original Count II failure-to-protect claim against COs Rybak and Lewis, and because these Defendants cannot be liable under his new theory, summary judgment is also appropriate as to Count II.

Stewart opposes entry of summary judgment as to the assault claim alleged in Count III, arguing there is sufficient evidence to permit a jury to find one or more COs were involved in the assault based on (1) his own testimony that at some point during the assault he could feel boots kicking him, and (2) Sergeant Eisler's testimony that COs wear boots but prisoners do not. While this evidence may be sufficient to create a genuine issue of fact as to whether any of the COs who responded to the assault participated in the attack, Stewart has yet to identify the responding COs.[9] He thus seeks to proceed to trial on this claim against an uncertain number of John and Jane Doe Defendants.

Although the law permits a plaintiff to "bring suit against a fictitious or unnamed party

---

[8] There is also no evidence suggesting that by following the staffing policies, COs Rybak and Lewis were deliberately indifferent to an excessive risk of harm to inmate safety, as CO Rybak testified the assault on Stewart was the only fight she could recall happening while she was in the E Dorm CO Booth. See Rybak Dep. 12-13.

[9] COs Rybak and Lewis are not named as Defendants in Count III, and Stewart does not contend either of these Defendants participated in the assault against him. Rather, Stewart alleges it was other unknown COs who responded to reports of the assault who then proceeded to "join[] in the assault by willfully kicking him as he lay on the floor." Am. Compl. 4. In his opposition to Defendants' summary judgment motion, Stewart notes Sergeant Eisler responded to the assault along with several other COs, but does not suggest Sergeant Eisler was one of the COs who assaulted him. See Pl.'s Opp'n to Defs.' Mot. for Summ. J. 2. Stewart also did not seek to substitute Sergeant Eisler as one of the Jane Doe Defendants in this case.

where a good-faith investigation has failed to reveal the identity of the relevant defendant and there is a reasonable likelihood that discovery will provide that information," *Martínez-Rivera v. Sánchez Ramos*, 498 F.3d 3, 8 (1st Cir. 2007), this Court is not aware of any authority permitting a plaintiff to go to trial against a unnamed defendant.  Rather, "[i]f reasonable discovery does not unveil the proper identities, . . . the John Doe defendants must be dismissed."  *Blakeslee v. Clinton Cnty.*, 336 F. App'x 248, 249 (3d Cir. 2009); *accord Scheetz v. Morning Call, Inc.*, 130 F.R.D. 34, 37 (E.D. Pa. 1990); *see also* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party.").  Here, Stewart had more than eight months to conduct discovery regarding the identities of the John and Jane Doe Defendants and to substitute the appropriate individuals once identified, as he did with COs Rybak and Lewis, the two Jane Doe COs who were on duty in E Dorm during Stewart's assault.  Because Stewart has not identified any of the COs who came into his housing section in response to the assault, despite having had ample opportunity to do so, the John and Jane Doe Defendants identified in Count III as "unknown Correctional Officers 3 through 12," Am. Compl. 4, will be dismissed.  *See Blakeslee*, 336 F. App'x at 250-51 (affirming the dismissal of John Doe defendants who remained unidentified after ten months of discovery).[10]  The claims against these still-unidentified John and Jane Doe Defendants (Counts I, III, and IV) will also be dismissed.

---

[10] Although Stewart has filed a motion for leave to amend his Amended Complaint, he has not sought additional time to discover the identities of the still-unknown John and Jane Doe Defendants.

**B.     Motion for Leave to Amend**

After the oral argument on CO Rybak and CO Lewis's motion for summary judgment, Stewart filed a motion for leave to amend his Amended Complaint to include a *Monell*[11] claim against the City of Philadelphia based on the new failure-to-protect theory articulated in his response to Defendants' summary judgment motion and at oral argument.  Specifically, Stewart seeks to add a claim alleging his injuries were the result of City policies of having only two COs on duty to supervise the up to 232 inmates in E Dorm, allowing a single CO to be left alone in the Dorm while the other was on break, and prohibiting a CO on duty alone in the Dorm from leaving the CO Booth in the event of an assault.

Amendments of pleadings prior to trial are governed by Federal Rule of Civil Procedure 15(a), which directs that leave to amend should be "freely give[n] . . . when justice so requires." A district court need not grant leave to amend, however, if the amendment would be futile or would prejudice the other party. *See Hill v. City of Scranton*, 411 F.3d 118, 134 (3d Cir. 2005). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).

Defendants argue permitting amendment would be futile because Stewart's *Monell* claim is unexhausted.  Under the Prison Litigation Reform Act (PLRA), a prisoner is required to exhaust "such administrative remedies as are available" before bringing suit with respect to prison conditions.  42 U.S.C. § 1997e(a); *see also Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (recognizing the PLRA made exhaustion mandatory).  "[T]he PLRA's exhaustion requirement

---

[11] *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (holding a local government may be sued under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury").

10

applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy this requirement, a prisoner must "properly exhaust" administrative remedies by "complet[ing] the administrative review process in accordance with the applicable procedural rules," as defined by the prison grievance process. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford*, 548 U.S. at 88).

As Stewart notes, failure to exhaust administrative remedies is an affirmative defense that the defendant must plead and prove. *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002). "[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Although the defense of failure to exhaust may be raised as the basis for a motion to dismiss in an appropriate case, *see Brown*, 312 F.3d at 110 & n.1; *Ray v. Kertes*, 285 F.3d 287, 295 n.8 (3d Cir. 2002), upon review of the record, it is apparent this is not such a case.

Defendants argue exhaustion may properly be considered at the pleading stage in this case because Stewart's failure to exhaust is apparent from the face of his original pro se Complaint, in which he "admits . . . he did not file a grievance or otherwise seek any administrative remedy." Defs.' Opp'n to Pl.'s Mot. to Amend 3. Stewart filed his original pro se Complaint in this action using the Eastern District of Pennsylvania's form prisoner complaint, which includes questions regarding the plaintiff's exhaustion of administrative remedies. In response to these questions, Stewart indicated he did not file a grievance about the events described in the Complaint "in the jail, prison, or other correctional facility where [his] claim(s) arose" or "at any other jail, prison, or other correctional facility." Compl. 4. Stewart also indicated, however, that the institution where his claims arose did not have a grievance procedure. *See id.* More importantly, in his counseled Amended Complaint, Stewart did not

11

repeat his earlier exhaustion-related allegations, but alleged he "signed a memo to the Warden complaining of his treatment" and "was not given a copy." Am. Compl. ¶ 13. In his reply brief on the exhaustion issue, moreover, Stewart asserts he "did file a complaint" about the matter, which "was investigated by the local police." Pl.'s Reply 3. Because Stewart's Amended Complaint "supersedes the original and renders it of no legal effect," this Court cannot look to the allegations in Stewart's original pro se Complaint in evaluating whether the City has established an exhaustion defense based on the pleadings. *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 171-72 (3d Cir. 2013) (citation omitted). While it is not clear whether the submissions Stewart references in his Amended Complaint or reply brief would constitute substantial compliance with the PDC's grievance procedures, the Court also cannot conclude, based solely on the pleadings, that the claim Stewart seeks to add is unexhausted as a matter of law and that Stewart's proposed amendment would therefore be futile.

Defendants also oppose Stewart's motion for leave to amend as unduly prejudicial to the City, which has never been a party to this action. In support of this prejudice argument, Defendants rely primarily on the amount of time that has elapsed since the assault occurred. *See* Defs.' Opp'n to Pl.'s Mot. to Amend. 3 (arguing that allowing Stewart "to name the City of Philadelphia for the first time nearly three years after the incident would be unduly prejudicial to the City, given that [Stewart's] § 1983 [claims] are subject to a two year statute of limitations"). Although delay in seeking leave to amend may at some point become undue, according to Stewart, the basis for his *Monell* claim only became apparent after discovery, and he requested leave to amend upon being alerted that the City was the appropriate Defendant for the claim he wished to pursue. In these circumstances, the Court will exercise its discretion to permit Stewart

to file a further amended complaint against the City of Philadelphia. Because the proposed (Second) Amended Complaint accompanying Stewart's motion for leave to amend includes claims as to which the Court has determined summary judgment or other dismissal is warranted, Stewart must submit a revised Second Amended Complaint advancing only his failure-to-protect claim against the City. Should the City then wish to seek summary judgment on its exhaustion defense, it is free to do so.

**CONCLUSION**

Because Stewart is no longer pursuing the theory of liability underlying Counts I and IV of his Amended Complaint, summary judgment will be granted in favor of COs Rybak and Lewis on both Counts. Summary judgment will also be granted in favor of COs Rybak and Lewis as to Count II, as the COs cannot be liable under the new failure-to-protect theory Stewart wishes to pursue. Because the identities of the additional John and Jane Doe Defendants named in the Amended Complaint remain unknown following the close of discovery, those Defendants will be dismissed from this action pursuant to Federal Rule of Civil Procedure 21. Counts I, III, and IV will therefore be dismissed as to these Defendants. The Court will, however, grant Stewart leave to amend his Amended Complaint to assert a failure-to-protect claim against the City of Philadelphia.

An appropriate order follows.

BY THE COURT:

　　/s/ Juan R. Sánchez　　
Juan R. Sánchez, J.