IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BARRY STEWART                   :          CIVIL ACTION
                                     :
  v.                       :          No. 12–5190
                                     :
CITY OF PHILADELPHIA        :

**MEMORANDUM**

**Juan R. Sánchez, J.**                                            **March 11, 2015**

In this civil rights action, Plaintiff Barry Stewart seeks damages for injuries he sustained as a result of his September 10, 2011, assault by other inmates (and, possibly, correctional officers) at the Philadelphia Detention Center (PDC), where he was then incarcerated.  In July 2014, Stewart sought leave to amend his then-operative Amended Complaint to add a *Monell*[1] claim against the City of Philadelphia, which had not previously been joined as a defendant, alleging for the first time that the assault was the result of the City's staffing policies for the PDC.  By Order of November 6, 2014, this Court permitted the amendment, and Stewart's *Monell* claim against the City is the sole remaining claim in this case.  The City now asks the Court to dismiss Stewart's Second Amended Complaint as time-barred because it was filed more than two years after Stewart's assault and does not relate back to his Amended Complaint.  For the reasons set forth below, the City's motion to dismiss will be granted.

**BACKGROUND**

In his original pro se Complaint, filed in October 2012, Stewart sued the "Warden/Superintendent" of the PDC pursuant to 42 U.S.C. § 1983, alleging certain unknown correctional officers allowed multiple inmates into his housing unit to "cause imminent danger, serious physical injury, and assault [and] battery."  Compl. 2, 3.  Because Stewart failed to name

---

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

as a Defendant anyone who could be served, the Court dismissed his original pleading with leave to file an amended complaint which "identifie[d] the individuals referenced in the caption" of the original Complaint and "include[d] all of his claims against these defendants."  Order 2, Oct. 19, 2012, ECF No. 4.  Stewart thereafter submitted a "Writ to Amend and Add Defendants Names to Complaint," seeking to name as Defendants Prison Commissioner Louis Giorla and Deputy Commissioner "Mr. Brockenbraugh" in their individual capacities, and a motion for appointment of counsel.  By Order of February 26, 2013, the Court granted Stewart's motion for counsel and granted Stewart's pro bono counsel's motion for an extension of time to file an amended complaint.  Because counsel would be filing an amended complaint, the Court denied Stewart's writ to amend as moot, noting any changes to the Complaint should be reflected in the forthcoming amended complaint.

On March 15, 2013, Stewart filed a counseled Amended Complaint against Prison Commissioner Giorla, two Jane Doe correctional officers who were on duty in Stewart's housing unit on the night of the assault, and an unknown number of other John or Jane Doe correctional officers.  The Amended Complaint included four counts:  (1) a failure-to-protect claim against all Defendants for placing Stewart, a Christian, in an open housing unit populated predominantly by Muslim prisoners who were known to be dangerous and assaultive toward Christians; (2) a failure-to-protect claim against the two Jane Doe correctional officers on duty when the attack occurred based on their willful indifference to Stewart's pleas for help during the attack; (3) a claim for assault against the other John and Jane Doe correctional officers, who allegedly responded to the incident but then joined in the assault by kicking Stewart as he lay on the floor; and (4) a conspiracy claim against all Defendants based on an alleged agreement among them to

place Stewart in an area populated predominantly by Muslims despite the dangers posed by such placement.

In April 2013, Giorla, represented by the City's Law Department, moved to dismiss the claims against him on the ground that the Amended Complaint failed to allege facts from which it could be inferred that he was deliberately indifferent to a serious risk of harm to Stewart.  In a letter dated May 29, 2013, Stewart advised the Court he did not oppose the motion as he had no reason to believe Giorla was personally involved in any of the actions underlying the lawsuit. The Court thereafter granted Giorla's motion, but directed that Giorla not be terminated as a party while counsel were actively working to identify the Jane and John Doe Defendants.  The parties eventually identified Correctional Officers Stacey Rybak and Towanda Lewis as the two Jane Doe officers on duty during the assault; in January 2014, Rybak and Lewis were substituted for Jane Does #1 and #2, and Giorla was formally terminated as a party to the action.  The remaining John and Jane Doe Defendants have not been identified.

In June 2014, after the close of discovery, Rybak and Lewis, also represented by the City's Law Department, filed a motion for summary judgment as to all claims against them.  In his opposition to the motion, Stewart conceded the discovery process had yielded "scant if any evidence" to support his failure-to-protect claim based on his placement in a predominantly Muslim housing unit, but argued the evidence supported a viable claim on the new theory that the assault was the result of the PDC's policy of understaffing Stewart's housing unit.  *See* Pl.'s Opp'n to Defs.' Mot. for Summ. J. 3-4 (arguing the prison's staffing policies "almost guaranteed that the assault would occur and would carry on for some minutes before help could be obtained").  At oral argument on the motion, Defendants objected that there was no basis to hold Rybak and Lewis liable under this new theory, arguing the City, not individual correctional

3

officers, would be the proper defendant for Stewart's new claim.  Stewart agreed the City was the proper Defendant for his revised failure-to-protect claim, and he thereafter filed a motion for leave to amend his Amended Complaint to include such a claim against the City.  In November 2014, the Court granted Rybak and Lewis's motion for summary judgment, but permitted Stewart to file a Second Amended Complaint raising only a failure-to-protect claim against the City based on its staffing policies.  The City now seeks dismissal of this lone remaining claim on the basis that it is untimely.

**DISCUSSION**

A claim pursuant to 42 U.S.C. § 1983 is governed by the statute of limitations that applies to personal injury tort actions in the state in which the claim arises.  *Pearson v. Sec'y, Dep't of Corr.*, 775 F.3d 598, 602 (3d Cir. 2015) (citation omitted).  In Pennsylvania, the applicable statute of limitations is two years.  *See id.*  A § 1983 claim accrues "when the plaintiff knew or should have known of the injury upon which [his] action is based."  *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998).  Absent a basis for tolling the statute of limitations—and Stewart has not identified one here—Stewart's failure-to-protect claim accrued when he was assaulted in September 2011, and the statute of limitations expired two years later, in September 2013.  Because Stewart did not seek leave to amend until July 2014, ten months after the limitations period lapsed, his Second Amended Complaint is untimely unless it relates back to the date of one of his earlier, timely-filed complaints pursuant to Federal Rule of Civil Procedure 15(c).  *See Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001) ("Rule 15(c) can ameliorate the running of the statute of limitations on a claim by making the amended claim relate back to the original, timely filed complaint.").

4

Where, as here, an amendment adds or changes a party, relation back is governed by Rule 15(c)(1)(C), which provides that the amendment relates back to the date of the original pleading if three conditions are met. *See id.* at 189. First, the claim in the amended pleading must have "ar[i]se[n] out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B), (c)(1)(C). Second, within the 120-day period for serving the summons and complaint, the party to be brought in by amendment must have "received such notice of the action that it will not be prejudiced in defending on the merits." Fed. R. Civ. P. 15(c)(1)(C)(i). Third, within the same 120-day period, the party to be added either must have known or should have known "that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii).

By its terms, Rule 15(c) addresses the circumstances in which an amended pleading will relate back to the date of the "original pleading." Fed. R. Civ. P. 15(c)(1). As the City notes, however, Stewart's original pro se Complaint was never served. Indeed, because the original Complaint did not identify any defendant who could be served, the Court dismissed it sua sponte pursuant to 28 U.S.C. § 1915(e) and granted Stewart leave to file an amended complaint identifying the individuals referenced in the caption. The Court agrees with the City that in these circumstances, Stewart's counseled Amended Complaint—filed in March 2013, six months before the statute of limitations expired in September 2013—should be treated as the "original pleading" for relation back purposes.

The City argues the new failure-to-protect claim in Stewart's Second Amended Complaint does not relate back to the date of his Amended Complaint because it does not satisfy the first and third requirements set forth above. The City asserts the new claim does not arise out of the same conduct, transaction, or occurrence set forth in the Amended Complaint because it is

5

based on a different factual situation and legal theory than Stewart's earlier claims. The City also maintains it had no reason to know within the applicable period that but for a mistake concerning the identity of the proper party, it would have been a Defendant in Stewart's Amended Complaint. Because the Court agrees the third requirement is not satisfied, the Court need not address the City's argument as to first requirement.

The question under Rule 15(c)(1)(C)(ii) is whether the newly joined party "knew or should have known that, absent some mistake, the action would have been brought against [it]." *Krupski v. Costa Crociere, S. p. A.*, 560 U.S. 538, 549 (2010). A court's inquiry under the Rule should focus on "what the prospective defendant reasonably should have understood about the plaintiff's intent in filing the original complaint against the first defendant." *Id.* at 554. The plaintiff's own postfiling conduct may also be relevant, but only insofar as such conduct "informs the prospective defendant's understanding of whether the plaintiff initially made a 'mistake concerning the proper party's identity.'" *Id.*

Stewart does not argue the City should have understood from his Amended Complaint that, but for a mistake concerning the City's identity, it would have been named as a defendant. Nor can the Amended Complaint reasonably be construed in this manner. The Amended Complaint named only individuals, whom Stewart sought to hold liable for their roles in placing him in a housing unit populated predominantly by Muslims, failing to respond to his cries for help during the assault, and participating in the assault by kicking him. Count II, the Count Stewart ultimately sought to replace with a *Monell* claim, named only the two Jane Doe correctional officers on duty during the assault and was premised on these Defendants' willful indifference to Stewart's pleas for help. Although Stewart sued Giorla, the Prison Commissioner, in addition to the individual correctional officers in other Counts, the Amended

Complaint did not indicate Giorla was sued in his official capacity and did not identify a City policy or custom that caused the alleged constitutional violation, as required to state a claim for municipal liability under § 1983.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (holding an official-capacity suit generally represents "only another way of pleading an action against an entity of which an officer is an agent" and thus requires the entity's policy or custom to have "played a part in the violation of federal law" (citations omitted)).  Indeed, Stewart's postfiling conduct made clear that he was not, in fact, pursuing an official-capacity claim against Giorla, as Stewart readily agreed to dismiss Giorla based on his lack of personal involvement in the actions leading to the lawsuit.  *Cf. Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (holding a government defendant "must have personal involvement in the alleged wrongdoing" to be individually liable in a § 1983 action).

Stewart instead focuses on his original pro se Complaint and writ to amend, arguing these earlier filings should be understood to name a City agency—either the PDC or the Philadelphia Department of Corrections (DOC)—as a defendant and were therefore sufficient to alert the City that it was being sued.  The Court disagrees.  As an initial matter, neither Stewart's original Complaint nor the writ to amend was ever served on any Defendant in this case.  Even assuming these filings can properly be considered for relation back purposes, neither gives any indication that Stewart was seeking to hold the City liable for his injuries.  Contrary to Stewart's assertion, his original Complaint named only the Warden/Superintendent of the PDC, not the PDC itself, as a Defendant.  *See* Compl. 2 (identifying the "Warden/Superintendent" as the sole Defendant in the case and listing the Defendant's place of employment as the PDC).  If anything, the allegations in the original Complaint suggest the intended defendants were the unknown correctional officers who allowed inmates into Stewart's housing unit to assault him, not the

PDC.  Noting that the caption of the writ to amend lists the Defendants as "DOC, Mr. Louis Giorla, Commissioner, and Deputy Commissioner, Mr. Bro[c]kenbraugh, both in their individual capacity, et al.," Stewart also argues it should have been obvious from the writ "that he was trying to cast a wide net, and that the implication was that he wanted to sue whoever in the City was responsible for what happened to him."  Pl.'s Opp'n to Mot. to Dismiss 2.  But nothing in the writ—which, like the original Complaint, was never served, and which was ultimately denied as moot—suggests Stewart was trying to name the DOC as a defendant.  To the contrary, the writ stated Stewart wished to add only Giorla and Brockenbraugh in their individual capacities as defendants for allowing him to be assaulted by other inmates without having those responsible arrested and charged criminally.  Moreover, Stewart did not pursue any allegations against the DOC in his counseled Amended Complaint, despite this Court's admonition in its Order denying the writ to amend that any changes to Stewart's Complaint should be reflected in his amended pleading.

The statute of limitations as to Stewart's *Monell* claim expired before he sought leave to add this claim against the City; therefore, absent a basis for relation back under Rule 15(c)(1)(C), his Second Amended Complaint is untimely.  Because nothing in Stewart's original or Amended Complaint, or in the 120-day service period, would have alerted the City that, but for a mistake regarding the City's identity, it would have been named as a Defendant in this action, Stewart's Second Amended Complaint does not relate back to the date of his Amended Complaint.  Accordingly, the City's motion to dismiss is granted, and the Second Amended Complaint is dismissed with prejudice as to the City, the sole remaining Defendant in this action.

BY THE COURT:

___/s/ Juan R. Sánchez_____
Juan R. Sánchez, J.

8